**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **VALERIE LEA M.,**[1]                              ) | |
|                            ) | |
|       **Plaintiff,**        ) | |
|                            ) | **CIVIL ACTION** |
| **v.**                            ) | |
|                            ) | **No. 25-2224-JWL** |
| **FRANK BISIGNANO,**        ) | |
| **Commissioner of Social Security,**  ) | |
|                            ) | |
|       **Defendant.**      ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i)

and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).

Finding no error in the Administrative Law Judge's (ALJ's) decision, the court ORDERS

that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

AFFIRMING the Commissioner's final decision.

## I.     Background

Plaintiff protectively filed an application for SSDI benefits on July 9, 2022.  (R.

17, 178-82).  After exhausting administrative remedies before the Social Security

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ failed properly to evaluate her obesity and fibromyalgia; failed properly to assess the total effects of her combined mental and physical impairments on her ability to remain on-task and on her attendance; failed to support the findings that Plaintiff's allegations of symptoms were inconsistent with the evidence; and failed to support the ALJ's persuasiveness findings regarding the medical opinions and prior administrative medical findings.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the

3

Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief in a somewhat different order than Plaintiff.

## II.    Evaluation of Plaintiff's Allegations of Symptoms

Plaintiff cites the portion of the ALJ's decision wherein the ALJ explained the inconsistencies she found between Plaintiff's allegations of symptoms and the record evidence and argues the ALJ improperly "cherry-picked benign findings and emphasized improvement with treatment and medication."  (Pl. Br. 16) (citing R. 26-27).  She continues, that the ALJ relied on "the most basic activities of daily living" and asserted the skills necessary for such activities "are like those required for full-time competitive

4

employment." (Pl. Br. 16-17) (quoting R. 27). She argues, "an individual's ability to perform basic life activities does not translate into an ability to perform work related activities on a full-time basis," and the activities listed by the ALJ are "not comparable to work-related activities within the context of a full-time work environment – five days per week, eight hours per day." Id. 17.

### A.    Standard for Considering a Claimant's Allegation of Symptoms

An ALJ's evaluations of a claimant's allegation of symptoms are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving a claimant's allegations. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413

(10th Cir. 1983). "Credibility determinations[2] are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper analysis of a claimant's allegation of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating alleged symptoms: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms;

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used by the Social Security Administration, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination is consistent with the approach set forth in Soc. Sec. Ruling (SSR) 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on June 13, 2024, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no longer a valid factor to be considered.

type, dosage, effectiveness, and side effects of medications taken to relieve symptoms;

treatment for symptoms; measures Plaintiff has taken to relieve symptoms; and other

factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R.

§ 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors which

overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d

at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489).

### B.        The ALJ's Findings

The ALJ found, "the claimant's statements concerning the intensity, persistence,

and limiting effects of [the alleged] symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision."  (R.

25).  Immediately thereafter she began explaining her reasons for finding Plaintiff's

allegations inconsistent with the record evidence.  Id. 26-27.

The ALJ found Plaintiff's allegations regarding "her cervical degenerative disc

disease, left shoulder adhesive capsulitis, and accompanying symptoms are inconsistent

with medical imaging of the claimant's spine and left shoulder," and her allegations

regarding "her cervical degenerative disc disease, left shoulder adhesive capsulitis,

morbid obesity, and accompanying symptoms are inconsistent with the claimant's status examination results and treatment history." (R. 26).  The ALJ found her allegations regarding "her carpal tunnel syndrome, diabetes mellitus, restrictive lung disease, fibromyalgia, and accompanying symptoms are inconsistent with the claimant's medical testing, examination results, and treatment history."  Id.  The ALJ found Plaintiff's allegations regarding "her depressive disorder, neurocognitive disorder, anxiety disorder, and accompanying symptoms are inconsistent with the claimant's examination results and treatment history;" and finally, the ALJ found, in general, Plaintiff's allegations regarding "her impairments and accompanying symptoms are also largely inconsistent with her activities of daily living."  Id. 27.  In each case quoted above, the ALJ supported her finding with citation to and discussion of record evidence and the court will not quote the ALJ's extensive citation.  Suffice it to say that the record evidence cited supports the ALJ's findings.

### C.   Analysis

Plaintiff's argument that the ALJ improperly "cherry-picked benign findings and emphasized improvement with treatment and medication" turns the burden of proof in this case on its head.  (Pl. Br. 16) (citing R. 26-27).  It is Plaintiff's burden to prove she cannot work, not the ALJ's or Commissioner's burden to prove that she can.  Thus, where, as here, the ALJ has followed the correct legal standard to evaluate Plaintiff's allegations of disabling symptoms and has cited record evidence supporting her determination to discount Plaintiff's allegations, it becomes Plaintiff's duty to point to evidence compelling a contrary finding—that Plaintiff's allegations of disabling

8

symptoms must be accepted.  Anything else is merely asking the court to reweigh the evidence and substitute its judgment for that of the Commissioner.

Plaintiff argues the ALJ's reliance on "the most basic activities of daily living" as necessitating skills "like those required for full-time competitive employment" (Pl. Br. 16-17) (quoting R. 27), is erroneous in Plaintiff's view because "an individual's ability to perform basic life activities does not translate into an ability to perform work related activities on a full-time basis," and the activities listed by the ALJ are "not comparable to work-related activities within the context of a full-time work environment – five days per week, eight hours per day."  Id. 17.  Once again, Plaintiff misses the point.  The ALJ did not suggest that Plaintiff's performance of "a wide variety of activities of daily living" demonstrates that she is able to perform a full-time job.  (R. 27).  Rather, she found Plaintiff's ability to perform her wide variety of her activities of daily living is inconsistent with Plaintiff's allegations of disabling limitations.  This finding is merely the last in two-pages of inconsistencies found between Plaintiff's allegations of disabling symptoms and the record evidence.  Plaintiff has not shown evidence which compels a contrary finding.

**III.    Evaluation of Medical Opinions and Prior Administrative Medical Findings**

Plaintiff offers a very brief and incomplete discussion of the legal standard applicable to consideration of medical opinions and prior administrative medical findings.  (Pl. Br. 17).  She then alleges, "The ALJ failed to support her rejection of both Dr. Neely's treating source opinion and Dr. Thayer's consultative examination report."  Id. 18.  She suggests problems with the ALJ's evaluation—sketchy criticism lacking

9

detailed citation, vague references to more recent evidence, improper inferences from activities of daily living, and mischaracterization of record evidence as largely benign findings. Plaintiff concludes, "There is no cogent explanation for [the ALJ's] rejection of either opinion, and she failed to build any sort of logical bridge between the evidence and her findings." (Pl. Br. 18).

### A.  Standard for Evaluating Medical Opinions or Prior Administrative Medical Findings

In 2017 the SSA revised its rules regarding evaluation of medical evidence including its then-current treating physician rule regarding the evaluation of medical opinions. The agency noted that

> Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision. As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be [a] highly deferential standard to us.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,853 2017 WL 168819 (SSA Jan. 18, 2017).

> It explained,

> To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice.

Id., 82 Fed. Reg. 5,844-01, 5,854 (emphasis added).

> By moving away from assigning a specific weight to medical opinions, we are clarifying both how we use the terms "weigh" and "weight" in final 404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that

10

adjudicators should focus on how persuasive they find medical opinions and prior administrative medical findings in final 404.1520c and 416.920c. Our intent in these rules is to make it clear that it is never appropriate under our rules to "credit-as-true" any medical opinion.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,858.

The regulations included a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination

11

or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2).  The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(3).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. § 404.1520c(d).

### B.    The ALJ's Findings

The ALJ evaluated the prior administrative medical findings of two psychological consultants and two medical consultants who reviewed the medical record at the initial and reconsideration levels of review.  (R. 28-29).  She also evaluated the medical opinions of Dr. Thayer in his report of a psychological consultative examination prepared for the SSA (R. 837-42) and of Dr. Neely in a mental and in a physical RFC assessment form prepared by him and presented to the SSA.  Id. 320-26.

The ALJ found the findings of the state agency psychological consultants persuasive because the consultants are highly qualified medical sources, their findings are largely consistent with the record, they supported their findings with detailed explanations citing objective evidence, and they provided detailed function-by-function assessments of RFC.  Id. 28.  The ALJ found the findings of state agency medical

12

consultant, Dr. Coto, unpersuasive because her findings are largely inconsistent with the record, she did not examine the claimant, she did not support her findings with detailed explanations, and she did not have the benefit of after-acquired evidence.  (R. 28).  The ALJ found the findings of state agency medical consultant, Dr. Torres, persuasive because he is highly qualified, his findings are consistent with the record, he supported his findings with detailed explanations citing objective evidence, and he provided a detailed function-by-function assessment of RFC.  Id. at 28-29.

The ALJ explained her reasons for finding Dr. Thayer's and Dr. Neely's medical opinions unpersuasive:

> Richard Thayer, PsyD, HSP, examined the claimant on May 5, 2023 (see 11F/1-6).  Following his examination, Dr. Thayer opined that the claimant: (1) had a "marked impairment in Valerie's current overall functional capacity"; (2) "has fair social skills and does not have the ability to interact with others routinely and appropriately"; (3) "has moderate impairment in her ability to adapt to changes in the environment"; (4) "has mild impairment for sustained concentration and persistence in simple and repetitive tasks as evidenced by difficulty with recall of items presented earlier"; (5) "has marked impairment retaining information and effectively carrying out instructions that are multi-step and complex"; (6) "has marked cognitive impairment in her cognitive ability to reason and make work related decisions"; (7) has "marked impairment managing herself"; and (8) "does not have the basic math skills to manage her own funds responsibly" (see 11F/6).  Dr. Thayer is an acceptable medical source and highly qualified.  However, Dr. Thayer's opinions are largely inconsistent with the current record.  For example, Dr. Thayer's opinion that the claimant "does not have the ability to interact with others routinely and appropriately" is inconsistent with the claimant's status examination results, consultative examination results, treatment history, and activities of daily living (see 4E/1-12; 5E/1-12; 8E/1-12; 2F/15-18; 6F/5, 9, 14; 11F/1-6; 15F/12; 17F/61; 18F/169; Testimony).  Dr. Thayer had the benefit of physically examining the claimant, but he did not support his opinions with detailed explanations indicating which specific piece of objective evidence supported each particular finding.  Dr. Thayer also failed to provide a complete function-by-function assessment of the claimant's residual

13

functional capacity.  Furthermore, Dr. Thayer was also not able to consider additional evidence that became available after he offered his opinions.  For these reasons, the undersigned finds Dr. Thayer's opinions unpersuasive.

Brian S. Neely, MD, completed a medical source statement on March 29, 2024 (*see* 17E/1-7).  Within his statement, Dr. Neely opined that the claimant had "paragraph B" limitations ranging from "none" to "marked" (see 17E/1-7).  Dr. Neely also opined that the claimant would miss more than three days of work per month (see 17E/4).  Furthermore, Dr. Neely opined that the claimant had significant exertional and postural limitations (see 17E/5-7).  Dr. Neely is an acceptable medical source and highly qualified.  Dr. Neely also provided a detailed function-by-function assessment of the claimant's residual functional capacity.  However, Dr. Neely's opinions are largely inconsistent with the current record.  For example, Dr. Neely's opinion that the claimant would miss more than three days of work per month is inconsistent with the claimant's status examination results, consultative examination results, treatment history, and activities of daily living (see 4E/1-12; 5E/1-12; 8E/1-12; 1F/5-7; 2F/55; 5F/1-3; 6F/18-19; 11F/1-6; 12F/19; 17F/58; 18F/16; 19F/16; Testimony).  Dr. Neely had the benefit of physically examining the claimant, but he did not support his opinions with detailed explanations indicating which specific piece of objective evidence supported each particular finding.  In fact, Dr. Neely's statement appears to be little more than a checklist-style form in which Dr. Neely offered conclusions without identifying the objective evidence he relied upon in forming those conclusions.  Dr. Neely was also not able to consider additional evidence that became available after he offered his opinions.  For these reasons, the undersigned finds Dr. Neely's opinions unpersuasive.

(R. 29).

**C.    Analysis**

Plaintiff's argument the ALJ did not support her assessment of the medical opinion evidence cannot stand in these circumstances.  Again, she attempts to place the burden on the Commissioner to prove she can work rather than on herself to prove she cannot work.  The ALJ explained her reasons to find the doctor's opinions unpersuasive and she supported those reasons by examples and citations to record evidence.  Id.  If

14

Plaintiff finds error in those findings, it is incumbent on her to point to record evidence demonstrating the error in the ALJ's findings. Her suggestion that the ALJ presented sketchy criticism lacking detailed citation, vague references to more recent evidence, improper inferences from activities of daily living, and mischaracterization of record evidence as largely benign findings is merely a thinly veiled attempt to get the court to reweigh the record evidence and reach a conclusion opposite to that of the ALJ. Contrary to Plaintiff's conclusion that "There is no cogent explanation for [the ALJ's] rejection of either opinion, and she failed to build any sort of logical bridge between the evidence and her findings" (Pl. Br. 18), the ALJ's evaluations quoted above provide pertinent, relevant facts and explanation in a logical progression, appealing to a reasonable mind, to support her decision. If Plaintiff believes a different conclusion must be reached, she must point to record evidence which compels, not merely supports, that conclusion.

## IV.    Plaintiff's Remaining Arguments

### A.    The ALJ's Consideration of the Effects of Fibromyalgia and Obesity

Plaintiff argues that the ALJ wrongly discounted the effects of fibromyalgia and obesity in assessing RFC. (Pl. Br. 10-13). Regarding fibromyalgia, Plaintiff suggests it was error for the ALJ to find fibromyalgia is a severe impairment in this case and also to state, "gratuitously, that the record does not appear to contain formal tender point test results." Id. 10 (citing R. 26). She argues, "the ALJ must be mindful that pain, fatigue, and other symptoms associated with fibromyalgia may result in limitations that should be incorporated into the RFC." Id. 11 (citing, without pinpoint citation, SSR 12-2p).

15

Plaintiff presents case law holding that symptoms of fibromyalgia are subjective and that negative test results or the lack of objective medical findings is not determinative that a claimant does not have disabling fibromyalgia. (Pl. Br. 11). She argues the ALJ's decision does not recognize the presence of this case law. She then suggests the ALJ erroneously discounted Dr. Neely's opinion despite Dr. Neely's finding Plaintiff has "significant limitations in physical and mental functioning, due in large part to Plaintiff's fibromyalgia" and that her pain is consistent with fibromyalgia and cognitive deficits secondary to long-term symptoms from fibromyalgia. Id. 11-12. She argues the ALJ therefore erred in finding Dr. Neely "did not support his opinions with detailed explanations indicating which specific piece of objective evidence supported each particular finding" (R. 29) because she has "a fundamental misunderstanding of fibromyalgia." (Pl. Br. 12).

Regarding her morbid obesity, Plaintiff argues the ALJ provided a misleading description of Plaintiff's obesity by stating her body mass index (BMI) is over 40 when, in fact, her BMI has ranged from 45 to 51. Id. She argues that even if she "is capable of sustaining various physical functions in a doctor's office, that does not translate into an ability to sustain such activities five days a week, eight hours per day." Id. She argues that although "the ALJ included a boilerplate assertion … that she factored in the effects of Plaintiff's obesity (R. 22, 27), there is no indication that she did so. Coupled with her obvious attempt to minimize the extent of Plaintiff's obesity, the absence of any analysis of its effects constitutes reversible error." (Pl. Br. 13).

16

Neither argument in this regard demonstrates error in the ALJ's decision. Although the ALJ accepted that Plaintiff's fibromyalgia is a severe impairment in this case, it is not error to also note the record does not contain tender point test results. SSR 12-2p presents two means of establishing a medically determinable impairment (MDI) of fibromyalgia. 2012 WL 3104869, *2-3 (SSA July 25, 2012). One of those means requires a test demonstrating at least 11 positive tender points on physical examination. Thus, the ALJ's explanation that the record does not contain a formal tender point test clarifies which criteria were used to evaluate Plaintiff's fibromyalgia. Id. *3.

Further, Dr. Neely's statements, that Plaintiff has significant limitations in physical and mental functioning, due in large part to Plaintiff's fibromyalgia; and that her pain is consistent with fibromyalgia and cognitive deficits secondary to long-term symptoms from fibromyalgia, do not demonstrate error in the ALJ's finding Dr. Neely did not support his opinions with detailed explanations indicating which specific piece of objective evidence supported each particular finding. Rather, they confirm that Dr. Neely provided sweeping generalized opinions of significant limitations and alleged consistencies with fibromyalgia symptoms without citation to objective medical evidence from his treatment records which would support the opinions. Plaintiff's suggestion that objective medical evidence is not required to demonstrate disabling fibromyalgia simply ignores SSR 12-2p which explains, "As in all claims for disability benefits, we need objective medical evidence to establish the presence of an MDI." Id. *3. Finally, the court has already found the ALJ properly discounted Plaintiff's allegations of disabling symptoms and Plaintiff's fibromyalgia argument does not change that analysis.

17

Regarding obesity, Plaintiff does not point to record evidence compelling a different finding. While Plaintiff argues that the ALJ did not adequately analyze her obesity, she acknowledges the ALJ considered obesity and stated she had factored its effects into the RFC assessed. It is Plaintiff's burden to prove otherwise and she has done nothing more than to hope the court would substitute its judgment for that of the ALJ.

**B.      On-Task and Attendance Requirements of Full-Time Work**

Plaintiff also argues that the ALJ failed to accommodate the effects of Plaintiff's combined mental and physical impairments on her ability to sustain full-time work despite being off-task and/or absent. She argues: The ALJ did not account for Plaintiff's pain. (Pl. Br. 13). The ALJ relied "solely upon her Step Three assessment of the so-called paragraph B criteria to find that, based solely upon Plaintiff's mental impairments alone, she would be able to sustain the on-task and attendance requirements of full-time work as long as the tasks are simple." Id. 13-14. "[T]he ALJ misrepresented the evidence, cherry-picked, and relied upon flawed inferences." Id. 14. The ALJ suggested "that improvement with medication and an absence of psychiatric hospitalizations somehow suggest that Plaintiff's symptoms do not result in work-related limitations." Id. 15 (citing R. 22). And "the ALJ explicitly failed to factor in the effects of Plaintiff's numerous physical impairments when assessing her mental RFC." Id. In making these assertions of error Plaintiff cites alternative facts and the opinions of Drs. Thayer and Neely in support of her position that "[t]he ALJ failed to explain how Plaintiff would be

18

able to comply with such [attendance and on-task] requirements, given her combined deficits." (Pl. Br. 16).

Plaintiff's alternative view of the evidence turns the burden of proof in a Social Security case on its head.  Here, as found above, the ALJ properly found Plaintiff's allegations of disabling symptoms inconsistent with the record evidence and provided her reasons for doing so.  She also properly found Dr. Thayer's and Dr. Neely's opinions unpersuasive and provided her reasons for doing so.  Moreover, the ALJ stated that her mental and physical RFC assessment (which includes and is intertwined with her evaluation of Plaintiff's alleged disabling symptoms) accommodated the mental and physical limitations reasonably supported by the record evidence.

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  It is for this reason that Plaintiff must point to record evidence which compels a different finding.  She has not done so here.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

19

20

Dated April 29, 2026, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

20